**In re Anonymous No. 36 D.B. 83**

Disciplinary Board Docket No. 36 D.B. 83.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

FRIEDMAN, *Member,* December 11, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

[  ] (hereinafter, petitioner), was disbarred on consent by Supreme Court order dated December 3, 1984. Petitioner's disbarment resulted from the following instances of his misconduct: misusing and misappropriating client funds obtained by securing unauthorized client loans; commingling and converting client funds for his own personal use; and failing to account for the disposition of these funds when requested to do so.

On June 29, 1983, a petition for discipline was filed. The petition alleged that petitioner had mismanaged, commingled and converted money belonging to people who had retained the petitioner as counsel. These actions were a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(3)—A lawyer shall not engage in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(c) D.R. 1-102(A)(5)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(d) D.R. 1-102(A)(6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(e) D.R. 7-101(A)(1)—A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available, lawful means;

(f) D.R. 7-101(A)(3)—A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

(g) D.R. 9-102(A)—All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein;

(h) D.R. 9-102(B)(1)—A lawyer shall promptly notify a client of the receipt of his funds, securities or other properties;

(i) D.R. 9-102(B)(2)—A lawyer shall identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safe-keeping as soon as practicable;

(j) D.R. 9-102(B)(3)—A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into possession of a lawyer and render appropriate accounts to his client regarding them; and

(k) D.R. 9-102(B)(4)—A lawyer shall promptly pay or deliver to a client as requested by a client the funds, securities, or other properties in possession of a lawyer which the client is entitled to receive.

On June 19, 1990, a petition for reinstatement was filed.

On June 25, 1990, the matter was referred to Hearing Committee [ ], which was chaired by [ ], Esquire and included members [ ], Esquire, and [ ], Esquire.

A reinstatement hearing was held on December 17, 1990. On June 24, 1991, the Hearing Committee filed its report, and recommended that petitioner be reinstated to the Pennsylvania bar.

The matter was adjudicated at the July 26, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts the findings of fact which are contained in the report of Hearing Committee [ ] and supported by documentary and testimonial evidence.

(1) Petitioner, [ ], was born on April 11, 1942. He was admitted to practice law in the Commonwealth of Pennsylvania in 1971 and immediately thereafter he began practicing in the Commonwealth of Pennsylvania, the U.S. Court of Appeals for the 3rd Circuit, and the U.S. District Court for the [ ] District of Pennsylvania.

(2) From 1974 to 1979, petitioner was employed in a firm in [ ], Pennsylvania where he was engaged in general practice work with an emphasis in criminal defense.

(3) Petitioner began consuming alcohol in college. After being admitted to practice, he ceased drinking. In 1972 and 1973, petitioner resumed drinking socially and his drinking progressed into weekend binges.

(4) In 1974 or 1975, petitioner began using cocaine. His addiction intensified into a daily habit. He became dependent on drugs to motivate himself to attend court.

(5) Petitioner was a functioning alcoholic and addict while continuing to practice law from the mid-1970's until 1985. During that time, he fully admits his misconduct in the following matters:

(a) Handling the representation of the [A] and misusing their funds for a period of years from 1974 to 1979.

(b) Receiving money after successfully opposing a forfeiture petition and, for a period of approximately six weeks, misusing these funds belonging to [B].

(6) These are the charges for which petitioner ultimately resigned and was disbarred on consent on December 14, 1984. Petitioner had no previous disciplinary violations.

(7) To the best of his knowledge, petitioner immediately notified all of his clients of his disbarment.

(8) At his disciplinary hearing, petitioner failed to raise the issue of his alcohol and drug abuse because, at that time, he had no real understanding or appreciation of his addiction.

(9) On January 25, 1985, at the request of his wife, petitioner admitted himself into [ ] Hospital and remained in treatment until March 13, 1985.

(10) The night after being discharged from the hospital facility, petitioner's wife took him to an Alcoholics Anonymous (hereinafter, AA) meeting where he was introduced to [C] and [D] (witnesses who testified during the reinstatement hearing.) This was the first time petitioner gained insight into the nature of his problem. Also, it was at this time that he and his family began family counseling.

(11) Since that initial AA encounter, petitioner has regularly attended its meetings, as well as meetings for Narcotics Anonymous (hereinafter, NA).

(12) Petitioner has been involved in various leadership positions in both of these groups. He has served as general chairperson of AA and as treasurer of NA.

(13) Petitioner was also a member of AA's Public Information Committee through which he addressed various groups, including the [ ] County Bar Association, concerning AA's drug and alcohol treatment program.

(14) Since 1985, petitioner has served as a sponsor for approximately 50 to 60 people. This position entails assisting people in recognizing their addictions and helping them to end their alcohol abuse.

(15) Other leadership positions held by petitioner include chairman of the Cub Scouts Committee in 1986; cub master in 1988 and 1989; and a volunteer coach for the [ ] Little League.

(16) From March 1985 up to and including the present, petitioner has been gainfully employed in non-legal work. During this time, he has neither been disciplined nor given an unsatisfactory rating concerning his job performance.

(17) In June 1985, petitioner devised a payment schedule with the Internal Revenue Service for his delinquent tax obligations. The amount owed was estimated due to the fact that there are no records of his tax returns prior to 1984.

(18) Petitioner has made full restitution to the [A] estate.

(19) During his disbarment, petitioner kept abreast of developments in the legal field by reading various law publications, including the *Pennsylvania Law Journal, National Law Journal,* and various advance sheets. Also, petitioner has read and has become familiar with the new Rules of Professional Responsibility.

(20) In addition, petitioner completed a basic practice course at [ ] University in 1989.

(21) [E], petitioner's doctor, testified that petitioner has been drug and alcohol free for approximately six years. He also stated that petitioner is no longer suffering from any mental or emotional problems which would hinder his ability to practice law.

(22) At the December 17, 1990 reinstatement hearing, several other witnesses, including petitioner's current employer, his former law partner, his son, three attorneys, and four members of the community, attested to petitioner's excellent reputation in the community for truthfulness and honesty, as well as being a law abiding citizen free from drug and alcohol dependence.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude present consideration of his petition for reinstatement.

(2) Petitioner has demonstrated with clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The board is presented with the sole issue of determining whether petitioner's request for readmission to the Pennsylvania bar should be granted. Two levels of inquiry must be satisfied before an attorney's fitness to practice law is ascertained and reinstatement is granted.

The threshold question at the first level of inquiry is whether an attorney could resume the practice of law, despite past violations, while neither adversely affecting "the integrity and standing of the bar or the administration of justice nor [being] subversive of the public interest." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986); Pa.R.D.E. 218(c)(3)(i). The second level of inquiry is whether the disbarred attorney has the moral qualifications, as well as the competency and learning in law that is required of all practicing attorneys in the Commonwealth of Pennsylvania. Pa.R.D.E. 218(c)(3)(i).

It is imperative that both inquiries are sufficiently fulfilled before an attorney is permitted to resume the position of being an administrator of justice. After all, once disbarred, attorneys have no reason to assume that they will eventually practice law at some future time. *Keller,* 506 A.2d at 875. These attorneys bear the burden of satisfying both standards by clear and convincing evidence before they may be readmitted into the legal system. *Office of Disciplinary Counsel v. [F],* 4 D.B. 76 (1989); Pa.R.D.E. 218(c)(3)(i).

## A. *First Level of Inquiry: The* Keller *Threshold*

The *Keller* threshold requires that a reinstatement be granted only after determining that the attorney's resumption of the practice of law would not have a detrimental effect on either the public or the bar. *Keller,* 506 A.2d at 875. This is accomplished by taking the initial step of analyzing the underlying offense and discovering whether it is so egregious that it precludes reinstatement. *[F],* 4 D.B. 76 at 4. The [F] case holds that certain acts of misconduct are too egregious to be corrected through time and rehabilitation.

The underlying offenses in the instant case involve petitioner's commingling, conversion and misappropriation of client funds. A review of Pennsylvania case law substantiates the board's opinion that petitioner's misconduct is not so repugnant to the integrity of the bar or public interest as to obviate his possible reinstatement. See *Office of Disciplinary Counsel v. [G]*, 26 D.B. 81, 7 D.&C.4th 260 (1990) (attorney granted reinstatement despite past violations of delivering a bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official) and *Office of Disciplinary Counsel v. [H]*, 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989) (attorney granted reinstatement despite his neglect of cases including allowing the statute of limitations to run, as well as his material misrepresentation to his clients.) Since petitioner has not committed acts of misconduct that are too egregious for consideration of reinstatement, the board now may properly consider whether a sufficient quantitative period of time has elapsed during which petitioner has engaged in qualitative rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986) and *[H],* 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989).

Petitioner was disbarred on consent over six and one-half years ago on December 3, 1984, after fully realizing and admitting that he was guilty of misconduct involving the misuse of client funds in two instances. In 1975, petitioner accepted representation of [   ] and [   ] [A] as their attorney-in-fact to handle their legal matters. From March 2, 1977 until early 1979, petitioner diverted for his own personal use approximately $85,900 of the [A's] funds. In a second matter, petitioner utilized

proceeds from the [A] "loan" check to satisfy a monetary obligation to another client, [B]. The Supreme Court of Pennsylvania has held that acknowledging misconduct, as the petitioner has done, is the first step towards rehabilitation and the restoration process. [H], 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989), See Pa.R.D.E. Rule 215.

Prior to the misappropriation of client funds and the misrepresentations which led to the instant proceedings, petitioner experienced an unblemished record and a satisfactory professional reputation. At the time of these acts of misconduct, petitioner had been a functioning alcoholic and an addict. His pattern of substance abuse materialized in his college years in the late 1960s and became amplified in the 1970s and early 1980s. Petitioner testified that while he was in the midst of his dependence on alcohol and cocaine he was unaware that he had a problem and needed help. Petitioner's addiction disrupted his life by causing him to become disorganized and unable to function coherently.

The turning event in petitioner's life manifested itself on January 24, 1985 when, at his wife's request, he admitted himself into [ ] Hospital and instituted treatment of his addiction. From that day forward, petitioner has never again used any illicit drugs or alcohol. In further support of petitioner's commitment to rehabilitate himself, he has attended daily either an Alcoholics Anonymous meeting or Narcotics Anonymous meeting, held leadership positions in both groups including three years a treasurer of NA, and delivered speeches on drug and alcohol recovery programs.

In a similar case, *Office of Disciplinary Counsel v. [I]*, 54 D.B. 78, 35 D.&C.3d 417 (1985), the petitioner resigned from the practice of law when he was brought before the board for complaints against him for neglect,

inattention, failure to act on matters entrusted to him, cover up and misrepresentations. In that case, it was determined that the petitioner was plagued with being an alcoholic. Just as the petitioner in [*I*] was reinstated after depicting his successful recovery from alcoholism, the board believes that petitioner in the instant case has sufficiently recovered from his addiction and has met the *Keller* threshold for reinstatement in that his present reinstatement would not pose a threat to the integrity of the bar or interest of the public.

## B. *Second Level of Inquiry*

(1) Moral Qualifications—

The second level of inquiry involves whether a petitioner possesses the necessary moral character to practice law in the Commonwealth of Pennsylvania. Rule 218(c)(3)(i), Pa.R.D.E. This question must be proven by clear and convincing evidence by any petitioner seeking reinstatement. *Id.* In the instant matter, the record indicates that petitioner has made full restitution to the [A] estate and has devised a payment schedule with the Internal Revenue Service for past delinquent tax obligations. He is remorseful of his past misconduct and has taken responsibility to rectify the circumstances by performing these actions.

Petitioner has worked diligently to rebuild his life since he consented to disbarment in 1984. After immediately notifying his clients that he had resigned from the practice of law, he diligently pursued non-legal employment. From 1985 to the present, petitioner has been gainfully employed.

Traditionally, many disbarred attorneys have presented testimony from numerous character witnesses to prove their moral fitness to be reinstated. *Office of Disciplinary Counsel v. [H]*, 4 and 35 D.B. 79, 5

D.&C.4th 557 (1989) and *Office of Disciplinary Counsel v. [J]*, 48 D.B. 77, 36 D.&C.3d 51 (1984). In the instant case, many witnesses testified as to petitioner's excellent reputation in the community for truthfulness and honesty, including his former law partner who stated, "I would welcome him (petitioner) back in my office." Even petitioner's doctor testified to the following: "[H]e's (petitioner) been clean and sober for a near six-year period, I think [that] argues very strongly for the likelihood he'll be straight tomorrow as well." Therefore, the board concludes that petitioner possesses the necessary moral qualifications to resume the practice of law.

(2) Competency and Learning in the Law—

The second level of inquiry also requires that an attorney be kept knowledgeable of the law during the period of disbarment. Rule 218(c)(3)(i), Pa.R.D.E. Petitioner has kept abreast of the law by enrolling in a Pennsylvania Legal Practice course on [ ], at [ ] University. In addition, petitioner has remained informed about current changes in the law by reading regularly both the *Pennsylvania Law Journal* and the *National Law Journal.* He also receives subscriptions to the advance sheets and *Purdons* from West Publishing Co. Since his disbarment in 1984, Pennsylvania has adopted the Rules of Professional Conduct. Petitioner has read the Rules thoroughly and attended a 1989 Rules seminar. The board concludes that petitioner has maintained the competency and requisite learning in the law for reinstatement to practice law in the Commonwealth of Pennsylvania.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for

reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Mr. Kerns abstained.

Messrs. Keller and Paris did not participate in the adjudication.

## ORDER

And now, December 11, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated September 17, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.